**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JOHN M. MEADOWS,**

     **Plaintiff,**

**vs.**                            **CIVIL ACTION NO. 2:19-CV-00273**

**ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered April 17, 2019 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12 and 15)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 12), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 15); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, John M. Meadows (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on April 20, 2015 alleging that his disability began on November 18, 2012[1] because of sciatica nerve damage, swelling in both ankles, alcoholism, depression, severe back pain, allergies, and diverticulitis.[2] (Tr. at 243) His claims were initially denied on October 14, 2015 (Tr. at 129-134) and again upon reconsideration on February 5, 2016. (Tr. at 139-145, 146-152) Thereafter, Claimant filed a written request for hearing on March 11, 2016. (Tr. at 153-154)

An administrative hearing was held on November 15, 2017 before the Honorable M. Drew Crislip, Administrative Law Judge ("ALJ"). (Tr. at 36-67) On February 22, 2018, the ALJ entered an unfavorable decision. (Tr. at 7-30) On March 6, 2018, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 218, 321-324) The ALJ's decision became the final decision of the Commissioner on February 22, 2019 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On April 12, 2019, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (ECF No. 12), in response, the Commissioner filed a Brief in Support

---

[1] Claimant amended his alleged onset date to May 20, 2015 at the administrative hearing. (Tr. at 66)

[2] After the initial level of review, Claimant submitted a Disability Report on December 7, 2015 asserting that he had experienced an "increase in mood swings, anxiety, depression, panic attacks, nausea, vomiting, shortness of breath, chest pain, constipation, hearing loss, and loss of vision. Also increase in radiating pain, numbness, and tingling in the back and legs." (Tr. at 277) In a subsequent Disability Report submitted on March 14, 2016, Claimant alleged that he had lower abdominal pain and pelvic pain, diarrhea and was using a cane at times as well as a back brace. (Tr. at 300)

of Defendant's Decision (ECF No. 15), to which Claimant filed his Reply (ECF No. 16). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 50 years old as of the alleged onset date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 23) Claimant has a high school education and primarily worked at a body shop detailing and selling cars. (Tr. at 56)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f),

3

416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

4

which you are able to function. See 12.00C through 12.00H of the Listing of
Impairments in appendix 1 to this subpart for more information about the factors
we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the
degree of your functional limitation: Understand, remember, or apply information;
interact with others; concentrate, persist, or maintain pace; and adapt or manage
oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas
(understand, remember, or apply information; interact with others; concentrate,
persist, or maintain pace; and adapt or manage oneself), we will use the following
five-point scale: None, mild, moderate, marked, and extreme. The last point on the
scale represents a degree of limitation that is incompatible with the ability to do any
gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s),
the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the
impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the
claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the
medical findings about the severe impairment(s) and the rating and degree and functional
limitation to the criteria of the appropriate listed mental disorder to determine if the severe
impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2),
416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither
meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional
capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings
and conclusion reached in applying the technique must be documented at the ALJ and Appeals
Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written
decision must incorporate the pertinent findings and conclusions based on the

technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2016. (Tr. at 13, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of May 20, 2015. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative disc disease; affective disorder; somatoform disorder; and drug and alcohol abuse. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work

> except this individual can only occasionally stoop, kneel, and crawl. This individual can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He has no other postural restrictions. He can have no exposure to unprotected heights. He is able to perform simple, routine, repetitive tasks with no production rate and no quota. He can have no public contact expect for incidental contact (such as passing in a hallway or pointing out the way to the restroom, and other very brief encounters of this nature that are incidental to his work). He may have occasional exposure to coworkers and supervisors, but the contact must be rather superficial, defined as being brief (lasting no more than 15 minutes at a time). This individual cannot participate in teamwork.

(Tr. at 15-16, Finding No. 5)

At step four, the ALJ found Claimant was not capable of performing past relevant work.

6

(Tr. at 22, Finding No. 6) At the final step, the ALJ determined that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. at 23, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability from May 20, 2015 through the date of the decision. (Tr. at 24, Finding No. 11)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**

Claimant asserts that the ALJ's evaluation and partial rejection of the opinion testimony provided by Steven Golub, M.D., is not supported by substantial evidence because it is the result of cherry-picking facts supporting his conclusion while minimizing and excluding probative facts contrary to the ALJ's findings; significantly, Dr. Golub's opinion was consistent with the opinion of Claimant's treating physician, John Richards, D.O. (ECF No. 12 at 5-7) Claimant argues this error is significant because pursuant to his vocational profile, had he been limited to sedentary work, he would have been deemed disabled per Medical-Vocational Rule 201.14. (<u>Id</u>. at 7) Next, Claimant contends that the ALJ failed to provide "good reasons" for rejecting Claimant's treating physician's opinion, and provided an insufficient analysis of this opinion in accordance with the Regulations. (<u>Id</u>. at 7-11) Claimant asks for an order reversing and remanding the final decision for an award of benefits, or for correction of these errors. (<u>Id</u>. at 12)

In response, the Commissioner argues that the ALJ also properly evaluated Dr. Golub's opinion pursuant to the Regulations, and points out that the ALJ's RFC assessment is almost entirely consistent with this opinion, and further, Dr. Richards' opinion was extreme and markedly inconsistent with both Dr. Golub's opinion and the record evidence. (ECF No. 15 at 11-13) The Commissioner contends that the ALJ provided a reasonable explanation as to why he did not adopt

Dr. Golub's opinion in its entirety and cited to the evidence in support of his findings. (Id. at 13) The Commissioner also argues that the ALJ provided good reasons for not giving Dr. Richards' opinion controlling weight, explaining it was inconsistent with Claimant's own testimony, that the opinion was "vague" because it provided no explanation for the exact limitations, that it was not consistent with the objective medical evidence and other medical opinions. (Id. at 14) Even Dr. Richards' own treatment notes were inconsistent with his opinion. (Id. at 14-15) The ALJ is not bound to conduct a factor-by-factor analysis in evaluating a medical opinion, and the ALJ's discussion of Dr. Richards' records was compliant with the dictates of the Regulations and he provided good reasons for discounting his opinion. (Id. at 15-16)

The Commissioner asserts that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 17)

In reply, Claimant reasserts that the ALJ impermissibly substituted his lay opinion concerning the radiological studies of Claimant's hip for the medical expert opinions of record; because there were no medical opinions of record that supported the ALJ's conclusion, which means that the ALJ reinterpreted the medical evidence on his own. (ECF No. 16 at 1-2) Further, the ALJ ignored the MRI evidence upon which Dr. Golub based his opinion, contrary to the Regulations and controlling case law. (Id. at 2) Finally, the ALJ's discount of Dr. Richards' opinion lacks an explanation, or "good reasons", as commanded by the Regulations, and the Commissioner's post hoc rationale is not a substitute for the ALJ's failings. (Id. at 3)

Claimant asks for remand so that these errors may be corrected. (Id. at 4)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Treating Physician, John P. Richards, D.O.:

Claimant began treatment with Dr. Richards on March 19, 2015. (Tr. at 415) In providing his medical history, Claimant reported two hospitalizations for alcohol detoxification and one hospitalization in September 2013 for ankle swelling. (Id.) During his examination, Claimant complained of back pain, sciatic nerve pain, bilateral ankle swelling, alcohol abuse, vision loss, hematuria, and occasional blood in his stool. (Tr. at 440) On examination, he had a full musculoskeletal range of motion. (Id.)

On March 24, 2015, Claimant had lumbar spine x-rays that revealed multilevel spondylitic changes, no evidence of a fracture or malalignment, preserved disc space height, and right nephrolithiasis. (Tr. at 458) Two days later, on March 26, 2015, Claimant returned to Dr. Richards and reported congestion, bilateral ankle pain, and that his medication was not helping his back pain. (Tr. at 438) He had a positive left straight leg test, crepitation, and tenderness. (Id.)

Shortly before he filed for disability benefits, Claimant told Dr. Richards that he was "interested in SSI". (Tr. at 434) He did not report back pain at that encounter; instead, he discussed his alcohol abuse, anger issues, blood in his stool, and esophageal tenderness. (Tr. at 434-435) Dr. Richards' review of symptoms did not discuss back pain and there were no musculoskeletal examination findings reported. (Tr. a 434) Claimant refused Osteopathic Manipulative Treatment (OMT) (Tr. a 435), which had been beneficial in the past. (Tr. at 434)

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Dr. Richards examined Claimant on April 23, 2015 and reported that he needed an MRI and EKG; he also referred Claimant to a psychiatrist. (Tr. at 432) There were no musculoskeletal examination findings reported. (Id.) Dr. Richards ordered a lumbar MRI. (Tr. at 433)

A May 20, 2015 MRI showed degenerative changes with anterior osteophytes at L1-2, L2-L3, and L3-L4, which were unremarkable. (Tr. at 498) He had a minimal generalized disc bulge at L4-L5 that resulted in mild narrowing of the right exit foramen. (Id.) There was no significant spinal canal stenosis. (Id.) The MRI also revealed a central disc protrusion at L5-S1, which resulted in a mild mass effect on the thecal sac, and mild bilateral exit foraminal narrowing. (Id.) In reviewing the report, John F. Mega, M.D.'s impression was mild spondylosis and "[n]o extruded disc herniation or significant spinal canal stenosis. (Id.)

On June 11, 2015, Claimant returned to Dr. Richards and reported no musculoskeletal complaints. (Tr. at 428) There were no musculoskeletal examination findings reported either. (Id.)

On August 20, 2015, in his alcohol treatment program, Claimant reported walking three times a week for twenty minutes at a time in accordance with his treatment plan. (Tr. at 393)

On September 22, 2015, Claimant returned to Dr. Richards to have a cyst removed from his back. (Tr. at 422) He denied musculoskeletal issues in his review of symptoms and no musculoskeletal examination findings were reported. (Id.)

On October 6, 2015, Claimant had the cyst suture removed. (Tr. at 488-489) There were no musculoskeletal review of symptom notes or examination findings. (Tr. at 488)

Claimant returned to Dr. Richards on December 2, 2015; his musculoskeletal examination was within normal limits. (Tr. at 486)

Claimant returned later that month, December 29, 2015, complaining of a rash; Dr.

Richards made no notes concerning a musculoskeletal review of symptom notes or examination. (Tr. at 484)

On March 22, 2016, Claimant reported that his medication was not helping his back pain; there was no record of a musculoskeletal examination. (Tr. at 418)

In August 2017, Dr. Richards referred Claimant for another lumbar spine MRI. (Tr. at 719-720) On September 12, 2017, a lumbar spine MRI revealed degenerative disc disease and facet arthropathy, left paracentral disc protrusion at L5-S1, and bilateral neuro-foraminal encroachment at L5-S1 and L4-L5. (Tr. at 688) A lumbosacral spine x-ray on the same day on demonstrated transitional anatomy at the lumbar sacral junction and no acute fracture. (Tr. at 690) Disc body height was maintained and there was sacralization of the left L6 transverse process and some disc space narrowing. (Id.)

A September 2017 x-ray of his left hip showed mild degenerative changes. (Tr. at 691)

Consultative Examiner Report:

On August 17, 2015, Deidre Parsley, D.O., performed an internal medicine consultative examination of Claimant. (Tr. at 348-353) Claimant reported low back pain, which began in the fall of 2012, but there was no injury history. (Tr. at 348) Claimant had not engaged in physical therapy, chiropractic treatment, injections or surgery; he took Neurontin for pain. (Id.) He reported that he stopped drinking the previous month, but had been "drinking up to 3 pints of vodka every day for approximately 15 years." (Tr. at 349)

Dr. Parsley examined Claimant and observed that he was comfortable sitting and in the supine position, had a normal gait, and had stable station. (Tr. at 351) There was no evidence of paravertebral muscle spasm, nor was there tenderness to percussion of the dorsolumbar spinous

11

process. (Tr. at 352) However, Claimant had positive left straight leg raising in the sitting and supine positions. (Id.) He also had 4/5 strength in his left lower extremity. (Id.) Dr. Parsley explained that her "objective findings do correlate with lumbar radiculopathy affecting the left lower extremity." (Id.)

John P. Richards, D.O., Treating Physician Opinion:

On August 25, 2015, Dr. Richards examined Claimant, who complained of right sided pain for the past month. (Tr. at 424) In his musculoskeletal examination, Claimant had crepitation and tenderness but he denied having musculoskeletal issues in his review of symptoms. (Id.) There was no recorded range of motion examination or straight leg raising testing. (Id.)

That same day, Dr. Richards, completed a "Routine Abstract Form – Physical" concerning Claimant's capabilities. (Tr. at 412-414) Dr. Richards reported that Claimant had "back pain x3 years." (Tr. at 412) He opined that Claimant could not lift over 10 pounds without pain, could not stand for more than 15 minutes without pain, and could not sit for more than 30 minutes without pain. (Id.) Dr. Richards concluded that Claimant could not perform any postural movements due to back pain and vertigo. (Id.) He stated that Claimant was compliant with medications and treatment and declined to provide any additional comments. (Id.) Dr. Richards completed portions of a musculoskeletal chart, reporting that Claimant had an unsteady gait but did not use an assistive device. (Tr. at 413) Dr. Richards opined that Claimant had a reduced range of motion in his lower back owing to pain and had been prescribed a back brace. (Id.) Dr. Richards did not identify whether Claimant had any straight leg raising, other range of motion issues, or motor strength/sensory/reflex issues. (Id.)

State Agency Physician Opinion:

On October 5, 2015, Rogelio Lim, M.D., examined Claimant's records and prepared an opinion concerning his physical residual functional capacity. (Tr. at 71-72, 74-76) Dr. Lim opined that Claimant could occasionally lift and/or carry 50 pounds and could frequently lift/carry 25 pounds. (Tr. at 74-75) He concluded that Claimant could stand and/or walk for six hours in an eight-hour workday and could sit for the same amount of time. (Tr. at 75) Dr. Lim opined that Claimant had no postural limitations except that he would be limited to occasionally climbing ladders, ropes, and scaffolds. (Id.) Dr. Lim concluded that Claimant's "allegations [were] exaggerated," referencing the findings of fact and analysis of evidence, and observing that there were no neurology or myelopathy findings. (Tr. at 76, referencing Tr. at 71-72)

On reconsideration, on February 1, 2016, Dominic Gaziano, M.D., analyzed the updated record and provided a second physical residual functional capacity assessment. (Tr. at 104-106) Dr. Gaziano agreed with Dr. Lim that Claimant had no postural limitations except that he would be limited to occasionally climbing ladders, ropes, and scaffolds. (Tr. at 105) Like Dr. Lim, he opined that Claimant could occasionally lift and/or carry 50 pounds and could frequently lift/carry 25 pounds. (Tr. at 104) Dr. Gaziano concluded that Claimant could stand and/or walk for six hours in an eight-hour workday and could sit for the same amount of time. (Id.)

**The Administrative Hearing**

Steven Golub, M.D., Medical Expert Testimony:

Dr. Golub testified about his review of the record evidence, including 2015 and 2017 MRIs, which documented degenerative disc and joint disease and mild foraminal encroachment with disc bulge. (Tr. at 46-47) He testified that "the evidence regarding the low back is a little bit uneven" because Claimant had positive straight leg raising in 2015, but his MRI did not show "any nerve

13

root impingement or any significant stenosis." (Id.) Dr. Golub opined that the records would not support a listing but would support postural limitations including: occasional stooping, kneeling, crawling, and stair climbing; sitting for six hours in an eight-hour day; standing and walking for "at least four hours in an eight-hour day;" and lifting and carrying 10 pounds frequently and 20 pounds occasionally. (Tr. at 47) Dr. Golub testified that the postural limitations began in May of 2015 because of the positive straight raise and MRI. (Id.)

Claimant Testimony:

Claimant testified that he started going to Dr. Richards because he had back pain, which had been going on for while. (Tr. at 54) He noticed that he was having difficulty mowing the grass without taking breaks, which he had never done before. (Id.) At that time, he was living with his mother, and would clean the dishes, do laundry, and go to the grocery store; he used to be able to walk the mile distance to the grocery store because he doesn't have a vehicle, but he can't do that anymore. (Tr. at 54-55) Claimant estimated that he could walk about two hours in a grocer store, but it hurts his back. (Tr. at 55) He explained that his back pain is located on his lower left side and it is constant. (Tr. at 55-56) He has a "nerve" that runs down his leg as well and it causes him difficulty with standing for any period of time. (Tr. at 56) He estimated that he might be able to stand about an hour during an eight-hour workday. (Tr. at 57) Regarding lifting or carrying, Claimant testified that he "feel[s] good about 15, no more than 20 pounds", and he won't attempt anything that will make anything worse. (Tr. at 56) During the day, Claimant does "limbering up stretches" recommended by his doctor, although it really hurts. (Tr. at 57) He also watches TV or movies during his "idle time" as well. (Tr. at 57-58) He still lives with his mother, but she lives in Florida during the cold weather. (Tr. at 58)

14

<u>William Tanzey, Vocational Expert Testimony:</u>

The ALJ asked the vocational expert a series of questions concerning a hypothetical worker of Claimant's age, education, and job experience. (Tr. at 60-65) In relevant part, the ALJ limited the hypothetical worker to: occasional pushing, pulling, and carrying 20 pounds and frequently pushing, pulling, and carrying 10 pounds; sitting for up to six hours; standing and walking for up to six hours; occasional stooping, kneeling, crawling, climbing ramps and stairs; no climbing of ladders, ropes, or scaffolds; and a number of non-exertional limitations. (Tr. at 63-64) The vocational expert testified that such a worker could perform a number of jobs at the light exertional level existing in the national economy. (Tr. at 64-65)

**<u>Scope of Review</u>**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluation of Opinion Evidence:

Per §§ 404.1527(a)(1), 416.927(a)(1):

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

The Regulations provide that an ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. With respect to the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. Id. §§ 404.1527(c)(2), 416.927(c)(2). Additionally, the

---

[4] The treating source rule has since been eliminated, effective March 27, 2017, however, because this claim predated this rule change, the pertinent Regulations in effect at the time apply. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5853 (Jan. 18, 2017).

Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id.

To the extent that Claimant argues that the ALJ failed to address both the 2015 and the 2017 MRIs upon which Dr. Golub expressly based his expert testimony (ECF No. 12 at 6), this argument lacks merit: the ALJ noted that after having had an opportunity to review Claimant's medical records, Dr. Golub testified that the MRI taken in May 2015 "established degenerative change with anterior osteophytes, but no stenosis" (Tr. at 17, 498) and that consultative examiner Dr. Deidre Parsley documented positive straight leg raising in the supine position as well as decreased muscle strength in Claimant's left lower extremity. (Tr. at 18, 348-355) The ALJ further noted that Dr. Golub reviewed the results of an MRI taken in September 2017 which revealed degenerative disc disease and facet arthropathy, a left paracentral disc protrusion at L5-S1 and neuroforaminal encroachment at certain levels, but no impingement. (Tr. at 18, 688) Additionally, Dr. Golub noted that an x-ray taken at the same time as the September 2017 MRI showed mild degenerative changes of the left hip. (Tr. at 18, 691) The ALJ then observed that "Dr. Golub noted that the evidence was somewhat contradictory, as the claimant had a positive clinical consultative examination for straight leg raise and mild weakness of the left leg, but there was no significant stenosis found by objective testing." (Tr. at 18) The ALJ determined that "[t]he objective testing and the testimony of Dr. Golub, which is supported in detail by his citations to the treatment records, supports the residual functional capacity assessment limiting the claimant to light physical demand level work with postural and environmental limitations." (Id.)

To the extent that Claimant argues that the ALJ "cited and selectively omit[ed]" that Claimant was instructed to walk three times a week for 20 minutes at a time in support of his

reasoning to depart from Dr. Golub's opinion (ECF No. 12 at 6)[5], this argument is unavailing.

Later in the decision, the ALJ evaluated Dr. Golub's opinion as follows:

> At the hearing, Dr. Steven Golub gave his opinion that while the claimant's physical conditions do not meet or medically meet a listing, they do cause limitations. Dr. Golub opined that [t]he claimant's back and hip impairments would limit the claimant to occasional stooping, kneeling, and crawling. He believed that while the claimant could occasionally climb stairs, he could never climb ladders or be around unprotected heights. The claimant could sit for 6 hours and stand and walk for at least 4 hours in an 8-hour day. Dr. Golub opined that the claimant could lift and carry 10 pounds frequently and 20 pounds occasionally. This opinion is afforded great weight.
> However, I have parted from Dr. Golub's determination regarding the claimant's ability to stand and walk for only 4 hours in an 8 hour day because the x-ray of the claimant's hip shows only mild degenerative changes. In addition, the claimant's treatment notes document that the claimant walks 3 times a week for exercise and to help avoid an alcoholic relapse (Exhibit 6F, page 38). **In addition, I considered the claimant' testimony at the hearing that he could walk in a store for about 2 hours prior to beginning to feel discomfort. I note that in the typical work setting, mid-morning breaks, lunch breaks, and mid-afternoon breaks are approximately two hours apart, allowing a chance to change positions and/or rest**.

(Tr. at 20, 393) (**bold** supplied) Although the ALJ did not explicitly add the detail from Claimant's treatment record that he walked three times a week for 20 minutes, it is significant that the ALJ does expressly note that Claimant's own testimony confirmed that he can walk for longer periods of time, that is, approximately 2 hours before he begins to feel discomfort. This is an important detail the ALJ added to his reasons for not adopting Dr. Golub's opinion in its entirety.

In short, the ALJ's assessment of Dr. Golub's opinion is appropriate given his narrative of the evidence supporting his conclusion.

---

[5] Moreover, to the extent that Claimant suggests that the ALJ impermissibly ignored the medical evidence or substituted his lay opinion for that of Dr. Golub, again, this assertion is without merit because the ALJ clearly considered all relevant medical and other evidence of record in order to assess Claimant's RFC. (See, ECF No. 12 at 6-7)

Next, to the extent that Claimant asserts that Dr. Golub's testimony and opinion were "wholly consistent" with the opinions provided by his treating physician, Dr. Richards (ECF No. 12 at 6), this assertion lacks merit in light of the ALJ's observed limitations prescribed by Dr. Richards:

> I have reviewed and considered the opinion of John Richards, D.O. (Exhibit 8F, page 1). Dr. Richards determined that the claimant could not lift over 10 pounds without pain. He reported the claimant cannot stand for 15 minutes without pain and could not sit for more than 30 minutes without pain. He opined that the claimant could not perform any postural movements due to back pain and vertigo. He also noted the claimant had depression. I afford this opinion regarding the claimant's abilities limited weight. Dr. Richards' opinions regarding the ability of the claimant to lift, stand, etc. are very vague. His opinions document what the claimant cannot do without pain but they do not quantify the pain or provide an exact limitation regarding the claimant's function-by-function ability. Furthermore, the opinions of Dr. Richards are not well supported by the objective medical evidence. The MRIs and x-rays do support some postural and exertional limitations, but not to the significant extent that are found by this physician. In addition, the claimant testified at the hearing that he would not feel comfortable lifting "more than 20 pounds." He also testified that he could shop in a grocery store for 2 hours. Because Dr. Richards' opinions are vague and are not supported by the claimant's own testimony or the balance of the objective medical documentation before me, they are given limited weight.

(Tr. at 21, 412) Clearly, the limitations opined by Dr. Richards differ to a "significant extent" from those opined by Dr. Golub.

Further, to the extent that Claimant indicates that the ALJ's evaluation of Dr. Richards' opinion deviates from the dictates of the Regulations insofar as he did not consider the length of treatment, frequency of examinations, nature and extent of the treating relationship, the supportability or consistency of Dr. Richards' opinion or his specialty (ECF No. 12 at 9-11), this argument, too, lacks merit. As noted by the Commissioner, this District and other courts in this Circuit have held that there is no requirement that an ALJ to expressly apply each of the factors

19

espoused by the Regulations in evaluating a medical opinion. (ECF No. 15 at 9)[6]; see also Hardy v. Colvin, No. 2:13–cv–20749, 2014 WL 4929464, at *2 (S.D.W.Va. Sept. 30, 2014) ("[T]he regulations require the ALJ to consider the six factors, but do not demand that the ALJ explicitly discuss each of the factors."). It is clear that the ALJ recognized via the testimony provided by Mary Buban, Psy.D. that Dr. Richards had been treating Claimant for a variety of health issues from 2015 through 2017:

> Dr. Buban testified that the claimant's records document that he struggled with anxiety. She testified that a physical treatment record dated September 18, 2017 (Exhibit 13F) documented that the claimant presented for back pain and informed the doctor that he had an anxiety attack at a retail shoe store the prior month (Exhibit 13F, page 4).[7]
> Dr. Buban also testified that the claimant's treatment records from his medical doctors establish that on April 9, 2015 the claimant's doctor, who was treating for both alcohol abuse and depression, recommended rehabilitation and detoxification (Exhibit 8F, page 24). On June 11, 2015, the doctor, John Richards, D.O., once more documented that the claimant was in need of in-house, long-term rehabilitation for his alcohol abuse (Exhibit 8F, page 18).[8]

(Tr. at 19-20) Though not explicitly stated, the ALJ recognized that Dr. Richards had been treating Claimant for several years, and expressly stated for both physical and mental health issues. Though the ALJ did not explicitly identify that Dr. Richards was a specialist[9], the ALJ nevertheless weighed Dr. Richards' opinion only with respect to Claimant's physical impairments; Dr. Richards

---

[6] Vest v. Colvin, No. 2:15-cv-05886, 2016 WL 5334668, at *3 (S.D.W.Va. Sept. 22, 2016); Lee Anne M. v. Comm'r Soc. Sec., No. ADC-18-1870, 2019 WL 1795530, at *5 (D. Md. Apr. 24, 2019) (citing Baxter v. Astrue, No. SKG-10-3048, 2012 WL 32567, at *6 (D. Md. Jan. 4, 2012); Williams v. Colvin, No. 3:12-1422-JRM, 2013 WL 3338492, at *7 (D.S.C. Jul. 2, 2013).

[7] The cited records concern Dr. Richards' office treatment notes dated March 22, 2016 to September 20, 2017. (Tr. at 672-694, 675)

[8] The cited treatment records both concern Dr. Richards' office treatment notes. (Tr. at 435, 429, respectively)

[9] Claimant has asserted in his brief that "Dr. Richards's specialization in neuromusculoskeletal medicine" was not mentioned by the ALJ. (ECF No. 12 at 11) The undersigned has reviewed the transcript of the medical record and there is no indication that Dr. Richards held himself out as a specialist in this area of medicine, however, throughout the record, Dr. Richards is referred to as a primary care physician or primary care provider. On his referral notes and prescriptions, Dr. Richards is noted to be a "Board Certified Family Physician." (See, e.g., 470, 473, 491, 694, 703, 705, 720) Even assuming Dr. Richards is such a specialist, the record does not sufficiently demonstrate this, therefore, the ALJ's failure to mention this specialty when assessing Dr. Richards' opinion is not erroneous.

further indicated that Claimant's physical condition resulted in a psychological impairment that affected his ability to work, "depression", however, Dr. Richards did not elaborate any further as to how this would have affected Claimant's concentration, persistence, etc. (Tr. at 412) Perhaps significantly, Dr. Richards did not indicate on his opinion form that he was a specialist in any area of medicine.

Finally, with respect to the "good reasons" provided by the ALJ for discounting Dr. Richards' opinion, the ALJ has discharged his duty pursuant to Sections 404.1527(c)(2) and 416.927(c)(2). The ALJ specifically stated that he found Dr. Richards' opinions regarding Claimant's ability to stand and lift vague, and specifically pointed out that neither the objective medical evidence, the MRIs and x-rays, nor Claimant's own testimony concerning his abilities to stand and lift, supported Dr. Richards' opinions. The Regulations provide that the opinions of treating physicians are to be weighed against the record as a whole, which the ALJ plainly did.

In sum, the undersigned **FINDS** that that the ALJ's explanation for the values he assigned to the opinions provided by Drs. Golub and Richards complies with the Regulations as well as this Circuit's jurisprudence, and further **FINDS**, the ALJ's assessment of those opinions was supported by substantial evidence.

### Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (ECF No. 12), **GRANT** the Defendant's request to affirm the decision (ECF No. 15), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 24, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

22